HIMON MILLER *vs.* FLORENCE K. MILLER.

FEBRUARY 25, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

PAOLINO, J. This is a petition by a husband for an absolute divorce. The case was heard in the superior court by a justice thereof who rendered a decision granting the petition on the ground of extreme cruelty. The case is before us on the respondent's bill of exceptions containing an ex-

ception to such decision and other exceptions to certain evidentiary rulings.

The record discloses the following undisputed facts. After a courtship of about three years which began while the petitioner was a student at Brown University the parties were married in Providence in this state on September 1, 1932. At that time petitioner was a medical student at Georgetown University in Washington, D. C. The respondent lived with her husband in Washington for the four years he was in medical school and during this time she was gainfully employed. After his graduation the parties returned to Providence and lived with respondent's parents until 1940 when they moved into their own home. In February 1939, after having completed an internship in Middletown, Connecticut, and a residency in a hospital in Providence, petitioner opened his office in the combination office and home built by the parties on a lot given them by respondent's father, who had also given them $3,000 toward construction costs. The petitioner practiced his profession there until June 1941 when he went into the military service.

The petitioner returned from the army in July 1945. Shortly thereafter he opened his office for the practice of psychiatry in a building separate and apart from his home. The respondent, who had served as his secretary while his office was in their home, continued to serve as such in his new office until sometime in 1947 when petitioner engaged a private secretary. However, she continued to help with the bookkeeping until 1952. Between December 18, 1936 and June 3, 1947 respondent bore the petitioner three children. At the time of the instant hearing their ages were 19, 14 and 9 years. The petitioner admits that respondent and her family provided the money for his medical education and maintenance during his years of study and while he was building up his practice, including, among other

things, automobiles, office equipment, furniture and effects for the home.

There is no evidence of physical violence or threats of the same sufficient to prove extreme cruelty. The parties lived together from the time of their marriage until October 1954 when petitioner left his home and family. The petitioner admits that his wife was a neat person; that she kept a clean house; and that the children were well fed and cleanly clothed. The petitioner wrote endearing letters to his wife during the time he was in the service and an examination of these reveals no hint of trouble between the parties. On the contrary they show love, affection and respect on the part of petitioner for his wife.

However, the petitioner testified in substance that from the very beginning of their married life his wife became the dominating personality in the household; that on several occasions he was humiliated and embarrassed in the presence of other people by her conduct; that she kept reminding him of the help he had received from her family; that she interfered in his professional life; that he felt if he did not leave the home, he would lose all his sense of personal dignity and would no longer be able to serve his patients or himself effectively; that he found he was experiencing periods of extreme fatigue and was becoming depressed; that his efficiency to practice his profession was impaired or at least threatened; and that he had to take some affirmative steps to change the situation. The petitioner testified further that his wife's conduct during their married life adversely affected his health and his ability to practice medicine and that he never gave her any cause to act in the way she did toward him.

Two physicians, one of whom was a cousin of petitioner and the other a friend who had served with him in the army, also testified in his behalf. The sum and substance of their testimony was that they had treated petitioner in

1955 and 1956; that he looked worn, and thin; that he was nervous; and that he appeared to have lost weight.

The respondent in substance denied that she had embarrassed or humiliated her husband in the presence of relatives or friends. Neither did she in any manner question the integrity or standing of her husband as an outstanding physician and psychiatrist. However, she testified that he was a poor businessman and admitted that she found fault with the manner in which he was charging his patients for his services. In short, she testified that her conduct was motivated entirely by her wifely interest in helping him whenever and wherever she could.

After reviewing the law and the evidence the trial justice in her rescript stated that she accepted the testimony of petitioner and his witnesses as true, convincing, and satisfactory and further that the testimony of respondent was not convincing and had no probative force. She thereupon found that respondent's conduct amounted to extreme cruelty. The question before us is whether the trial justice applied the correct rule of law to petitioner's evidence of extreme cruelty. Unless her decision is clearly erroneous it will not be disturbed. *Bastien* v. *Bastien*, 57 R. I. 176, 177. Accepting the testimony of petitioner and his witnesses as true, it is our opinion that such evidence does not support the charge of extreme cruelty.

Extreme cruelty as a ground for divorce under our law is limited to physical cruelty, but such cruelty is not confined to acts of physical violence or threats of the same. *Bastien* v. *Bastien, supra,* at page 177. In the absence of physical cruelty due to something in the nature of violence it is only in an unusual case that a divorce is granted on the ground of extreme cruelty. *Salvatore* v. *Salvatore,* 61 R. I. 109, 112. While the courts have generally declined to attempt any precise legal definition of extreme cruelty and have stated in many cases that evidence either of physical violence or of threats of physical violence is not required to

150

establish a charge of extreme cruelty, and although they have stopped short of an exclusive definition of that term, *Bastien* v. *Bastien, supra,* at page 177, nevertheless strict tests have been established by our decisions setting forth certain requirements which must be met by one seeking a divorce on such ground. See *Grant* v. *Grant,* 44 R. I. 169; *Borda* v. *Borda,* 44 R. I. 337; *McKeon* v. *McKeon,* 54 R. I. 163; *Bastien* v. *Bastien, supra; Salvatore* v. *Salvatore, supra; Jackson* v. *Jackson,* 70 R. I. 333; *Santos* v. *Santos,* 80 R. I. 5; *Di Nofrio* v. *Di Nofrio,* 85 R. I. 21, 125 A.2d 194.

It is well established from these and other cases involving extreme cruelty that such issue must be decided upon the particular facts of each case, and that a divorce upon that ground will not be granted except upon clear and convicing evidence that the petitioner was without fault and that the alleged conduct or acts of cruelty were deliberate, intentional and calculated to cause, and which did in fact cause, an impairment of health of the petitioning party or which would inevitably result in such impairment of health if the course of conduct complained of continued. *Bastien* v. *Bastien, supra.*

Moreover it is well established that the course of conduct complained of must be proved by clear and convincing evidence. This court has held that the effect of such conduct and not the conduct itself constitutes the basis for the charge of extreme cruelty in the circumstances. *Bastien* v. *Bastien, supra,* at page 177. It follows that proof of such effect must also be founded on clear and convincing evidence.

In the instant case the evidence relied upon by petitioner, and by the trial justice in her decision, was in substance that his wife dominated him in his professional, social and home life; that she embarrassed and humiliated him in the presence of his family, friends and professional associates by calling attention to the substantially undisputed fact that she and her family had helped him financially in his

schooling and early years of married life; that in the presence of others she berated him as a poor businessman in the handling of his office; and that as a result of this course of conduct his health became impaired and his efficiency in his professional work was affected.

Granting that respondent's conduct was precisely as petitioner and his witnesses testified, it is our opinion, after a careful examination of the entire record, that petitioner failed to sustain the burden of proving by clear and convincing evidence that his health had been impaired by respondent's conduct or that such conduct, if continued, would inevitably injure his health. The evidence relating to petitioner's health depended to a great extent upon the testimony of two physicians, one of whom was related to petitioner and the other was a close friend. In our opinion their testimony does not meet the standard of clear and convincing evidence required in a case such as this. In fact, the trial justice questioned whether the consultations between petitioner and these physicians were strictly professional. We therefore do not believe that the trial justice's findings that his health was impaired and his ability to work affected are warranted by the evidence.

Whether or not respondent's conduct amounted to mental cruelty is not pertinent. *McKeon* v. *McKeon*, 54 R. I. 163. In view of our conclusion that the petitioner's evidence relating to his impairment of health and ability to work does not amount to the clear and convincing quality required to support a divorce on the ground of extreme cruelty, we believe that the trial justice was clearly in error in making the finding of extreme cruelty. In the circumstances we do not deem it necessary to consider the respondent's other exceptions.

The respondent's exception is sustained, and on March 5, 1958 the petitioner may appear before this court to show cause, if any he has, why the case should not be remitted

to the superior court with direction to deny and dismiss his petition.

SHOW CAUSE HEARING.

MAY 14, 1958.

PER CURIAM. In the above-entitled case, pursuant to the permission given in our opinion heretofore filed, the petitioner through his attorney appeared to show cause, if any he had, why the case should not be remitted to the superior court with direction to deny and dismiss his petition. At that time reasons were presented in support of his contention that the appeal should be denied and the decision for the petitioner sustained.

Upon consideration we are of the opinion that no sufficient cause has been shown to change our conclusions. Therefore the case is remitted to the superior court with direction to deny and dismiss his petition.

*Coffey, Ward, Hoban & McGovern, Matthew E. Ward,* for petitioner.

*Charles H. Drummey,* for respondent.